THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | **No. 2:08-md-01919-MJP**<br><br>**ERISA PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION, AND CERTIFICATION OF THE SETTLEMENT CLASS** |
| IN RE WASHINGTON MUTUAL, INC. ERISA LITIGATION<br><br>This Document Relates to:<br>　　All Actions | Lead Case No. C07-1874 MJP<br><br>NOTE ON MOTION CALENDAR:<br>**November 5, 2010   3:30 p.m.**<br><br>**[ERISAPL-15]** |

PLAINTIFFS' MOTION AND
MEMORANDUM FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

# TABLE OF CONTENTS

I.      MOTION ........................................................................................................... 1

II.     INTRODUCTION ............................................................................................. 1

III.    PROCEDURAL AND FACTUAL BACKGROUND ........................................ 2

    A.    Description of Litigation ......................................................................... 2

    B.    Investigation of Claims and Discovery .................................................. 4

    C.    Settlement Negotiations .......................................................................... 8

    D.    Terms of the Settlement Agreement ....................................................... 8

    E.    Bankruptcy Court Approval .................................................................. 10

    F.    Reasons for Settlement ......................................................................... 10

IV.     ARGUMENT .................................................................................................. 10

    A.    The Settlement Agreement Meets the Judicial Standards for Final
         Approval ............................................................................................... 10

         1.    The Strength of Plaintiffs' Case Favors Approval of the
              Proposed Settlement ................................................................. 12

         2.    The Risk, Expense, Complexity, and Likely Duration of
              Further Litigation Weighs in Favor of Approval. ................... 13

         3.    The Risk of Maintaining Class Action Status Throughout the
              Trial Weighs in Favor of Approval. ........................................ 14

         4.    The Amount Offered in Settlement Weighs in Favor of
              Approval ................................................................................... 14

         5.    The Extent of Discovery Completed and the Stage of the
               Proceedings Weigh in Favor of Approval ................................ 17

         6.    The Experience and Views of Counsel Weigh in Favor of
              Approval ................................................................................... 17

         7.    The Reaction of Class members to the Proposed Settlement ... 18

    B.    The Settlement is not a Prohibited Transaction Under ERISA ............ 18

    C.    The Plan of Allocation is Fair and Reasonable and Should be
         Approved ............................................................................................... 22

    D.    This Court Should Certify The Settlement Class .................................. 24

V.      CONCLUSION ............................................................................................... 24

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

# TABLE OF AUTHORITIES

**Cases**

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992)........................................................................11, 22

*Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................13, 14, 17

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977)...........................................................................17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)...........................................................................12

*In re Citric Acid Antitrust Litig.,*
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................22

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................23

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000).............................................................................16

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................17

*In re Schering Plough Corp. ERISA Litig,*
    589 F.3d 585 (3d Cir. 2009)..............................................................................14

*In re Sprint Corp. ERISA Litig.,*
    443 F. Supp. 2d 1249 (D. Kan. 2006) ................................................................23

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008)...........................................................................15

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.,*
    536 F. Supp. 2d 1377 (J.P.M.L. 2008)................................................................2

*In re Wireless Facilities, Inc.,*
    253 F.R.D. 630 (S.D. Cal. 2008)........................................................................11

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998)...........................................................................14

*Local 159 v. Nor-Cal Plumbing, Inc.,*
    185 F.3d 978 (9th Cir. 1999).............................................................................20

*Lockheed Corp. v. Spink,*
    517 U.S. 882 (1996)....................................................................................18, 19

*MWS Wire Indus., Inc. v. California Fine Wire Co., Inc.,*
    797 F.2d 799 (9th Cir. 1986).............................................................................10

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 625 (9th Cir. 1982).................................................................................... 11, 16

*Quan v. Computer ScisCorp.,*
    No. 09-56190 (9th Cir. Sept. 30, 2010)............................................................................ 15

*Rodriguez v. West Publ. Corp.,*
    2007 U.S. Dist. LEXIS 74767 (C.D. Cal. Sept. 10, 2007)................................................. 11

*Tibble* v. *Edison Int'l,*
    639 F. Supp. 2d 1074 (C.D. Cal. 2009)............................................................................ 22

## Statutes

11 U.S.C. § 362(a) ............................................................................................................... 3

29 U.S.C. § 1002(21) ........................................................................................................... 19

29 U.S.C. § 1101(a)(2) ......................................................................................................... 18

29 U.S.C. § 1104(c) .............................................................................................................. 3

29 U.S.C. § 1106 ................................................................................................................... 18

29 U.S.C. § 1106(a)(1) .............................................................................................. 18, 19, 20, 21

29 U.S.C. § 1106(a)(2) ................................................................................................... 18, 21

29 U.S.C. § 1109 ................................................................................................................... 4

29 U.S.C. § 1132(a)(2) ...................................................................................................... 4, 14

## Rules

Fed. R. Civ. P. 23(b)(1) ......................................................................................................... 14

Fed. R. Civ. P. 23(e)(1) ......................................................................................................... 11

Fed. R. Civ. P. 23(g) .............................................................................................................. 2

Fed. R. Civ. P. 26(f) ............................................................................................................... 6

Fed. R. Civ. P. 42(a) .............................................................................................................. 2

Fed. R. Civ. P. 54(b) .............................................................................................................. 4

Fed. R. Civ. P. 9(b) ................................................................................................................ 3

## Other Authorities

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ...................... 11

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page iii

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

## I.    MOTION

Plaintiffs Gregory Bushansky, Dana Marra and Marina Ware ("Plaintiffs" or "Named "Plaintiffs") respectfully move the Court for an Order granting Final Approval of the proposed Settlement and Plan of Allocation, and certification of the Settlement Class.[1]

## II.    INTRODUCTION

In its Preliminary Approval Order, this Court preliminarily certified the Settlement Class in this action, appointed the Named Plaintiffs to serve as representatives of the Settlement Class, and preliminarily approved the proposed Settlement.  The parties reached the proposed Settlement after hard-fought litigation that encompassed extensive investigation, motion practice, class and merits discovery, and contentious settlement negotiations.  The Settlement provides for a cash payment of $49,000,000, the net of which will be allocated among Class members based on the loss to each Class member's account in the WaMu Savings Plan ("Plan") as a result of their Plan account investment in Washington Mutual, Inc. ("WMI" or "Company") common stock during the Class Period.  Additionally, the Settlement provides for JPMorgan Chase Bank, N.A. ("Chase") to pay for the distribution of the Class Notice and Publication Notice, as well as the implementation of the Plan of Allocation.

On August 6, 2010, the Court issued its Preliminary Approval Order [Dkt. #707].  Pursuant to the schedule in the Preliminary Approval Order, Class Counsel are now filing this motion and memorandum, along with the Motion and Memorandum of Points and Authorities in Support of Motion for Award of Attorneys' Fees, Expenses, and Service Awards for Named Plaintiffs, and the Joint Declaration of Derek W. Loeser and Andrew M. Volk in Support of ERISA Plaintiffs' Motion for Final Approval of the Settlement and Plan of Allocation and Certification of Settlement Class, and ERISA Plaintiffs' Petition for Award of Fees and Expenses and Service Awards for Named Plaintiffs ("Loeser/Volk Decl.").[2]

---

[1] Capitalized terms not otherwise defined in this memorandum have the same meanings ascribed to them in the Settlement Agreement.

[2] The Settlement Agreement is attached as Exhibit A to the Loeser/Volk Decl.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1  The Settlement resolves all claims asserted by Plaintiffs against all Defendants, and is an

2  excellent recovery for the Class.  Both the Settlement and the Plan of Allocation under which the

3  proceeds will be distributed are fair, reasonable, and adequate under the governing standards for

4  evaluating class action settlements in this Circuit.  Consequently, Plaintiffs respectfully request that

5  this Court Grant Final Approval of the Settlement and Plan of Allocation, and Certify the

6  Settlement Class so that Settlement Class members may partake in the substantial benefits of the

7  Settlement. [3]

8  ### III.   PROCEDURAL AND FACTUAL BACKGROUND

9  **A.**   **Description of Litigation**

10  The first ERISA case was filed on November 20, 2007 on behalf of the participants and

11  beneficiaries of the Plan.  Thereafter, eight additional substantially identical cases were filed.  The

12  nine actions were transferred to this Court for coordinated or consolidated pretrial proceedings by

13  order of the Judicial Panel on Multidistrict Litigation, *see In re Wash. Mut., Inc. Sec., Derivative &*

14  *ERISA Litig.*, 536 F. Supp. 2d 1377, 1378 (J.P.M.L. 2008), and were consolidated by this Court

15  pursuant to Rule 42(a) by order dated May 7, 2008 [Dkt. #25].  On May 20, 2008, this Court

16  appointed Keller Rohrback L.L.P. and Hagens Berman Sobol Shapiro LLP as Interim Co-Lead

17  Counsel ("Class Counsel") pursuant to Rule 23(g) [Dkt. #41].

18  Plaintiffs filed a Consolidated Amended Complaint for Breaches of Duty Under the

19  Employee Retirement Income Security Act ("Consolidated Amended Complaint") [Dkt. #66] on

20  August 5, 2008.  The Consolidated Amended Complaint asserted claims under the Employee

21  Retirement Income Security Act of 1974, as amended ("ERISA") against members of the Plan

22  Investment Committee ("PIC") and the Plan Administration Committee ("PAC"), certain members

23  of the Board of Directors of WMI who were members of the Human Resources Committee ("HR

24  Committee Defendants"), and former defendants Kerry Killinger and WMI.  Defendants named in

25

26  ---
[3] The [Proposed] Final Order and Judgment ("Final Approval Order") is attached as Exhibit D to the Settlement Agreement.

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 2

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

the Consolidated Amended Complaint moved to dismiss that complaint on September 19, 2008 [Dkt. #148].  Prior to Plaintiffs' responses to Defendants' motions to dismiss, WMI filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.  *See In re Wash. Mut., Inc.*, No. 08-12229 (Bankr. D. Del. filed Sept. 26, 2008) ("Chapter 11 Case").  As a result of the Chapter 11 Case, all claims against WMI in this District Court ERISA action were stayed pursuant to 11 U.S.C. § 362(a).  Plaintiffs in the ERISA action filed proofs of claim (the "Bankruptcy Claims") in the Chapter 11 Case.

In light of the WMI bankruptcy proceedings, Plaintiffs filed their Consolidated Second Amended Complaint for Breaches of Duty Under the Employee Retirement Income Security Act ("Complaint") on February 18, 2009 [Dkt. #223], without WMI as a defendant and adding JPMorgan Chase Bank, N.A. ("Chase") as a defendant.  The Complaint asserted claims on behalf of all persons who were participants in or beneficiaries of the Plan at any time between October 19, 2005 and September 26, 2008 ("Class Period") and whose individual Plan account included investment in Company stock.

By April 27, 2009, all Defendants filed their respective motions to dismiss [Dkt. #258, #260, #262, #265].  Their motions attacked all aspects of Plaintiffs' case, and included the following arguments, among others:

- WMI stock was hard-wired in the Plan as a matter of plan design, and because Defendants had no power to remove or restrict it, they could have no liability;

- ERISA § 404(c), 29 U.S.C. § 1104(c), placed the responsibility for the Plan's investments on the individual participants and served as an absolute defense to Plaintiffs' claims;

- Plaintiffs' allegations did not comply with Rule 9(b);

- Chase was not WMI's successor-in-interest;

- Since WMI was not a fiduciary of the Plan, Chase – WMI's alleged predecessor – was not a fiduciary;

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 3

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1       •     The HR Committee Defendants were not responsible for the decisions made by the

2 PIC Defendants; and

3       •     Defendant Killinger never made any statements in a capacity as a Plan fiduciary.

4       The Court heard oral argument on August 6, 2009.  On October 5, 2009, the Court entered

5 an Order granting in part and denying in part Defendants' motions to dismiss.  Among other things,

6 the Court dismissed all claims against defendants Killinger and Chase [Dkt. #362].

7       Subsequently, Plaintiffs filed a Rule 54(b) Motion to Direct the Entry of Final Judgment for

8 Chase [Dkt. #366], and the PIC and PAC Defendants filed a Cross-Motion for Certification

9 pursuant to 28 U.S.C. § 1292(b) [Dkt. #372], which Plaintiffs opposed [Dkt. #383].  The Court

10 denied Plaintiffs' Rule 54(b) Motion without prejudice to revisit the issue after the Court ruled on

11 class certification, and denied as moot the PIC and PAC Defendants' Cross-Motion [Dkt. #417].

12       On October 20, 2009, the HR Committee Defendants filed a Motion for Reconsideration

13 [Dkt. #373], which Plaintiffs opposed [Dkt. #385].  On November 30, 2009, the Court denied the

14 HR Committee Defendants' Motion for Reconsideration [Dkt. #394].

15       The remaining Defendants filed their respective answers on January 15, 2010 [Dkt. #427,

16 #429].  Plaintiffs moved to strike certain of Defendants' affirmative defenses [Dkt. #442].  On

17 February 25, 2010, the parties filed a Stipulation and Proposed Order Resolving the Motion to

18 Strike [Dkt. #458], which the Court entered on March 4, 2010 [Dkt. #464].

19 **B.**     **Investigation of Claims and Discovery**

20       The Complaint seeks to recover losses under ERISA §§ 409 and 502(a)(2), 29 U.S.C.

21 §§ 1109 and 1132(a)(2) suffered by the Plan as a result of Defendants' alleged breaches of

22 fiduciary duty.  The Complaint alleges six causes of action:  (1) failure to prudently and loyally

23 manage the Plan's investment in WMI stock; (2) failure to monitor fiduciary appointees; (3) failure

24 to disclose necessary information to co-fiduciaries; (4) failure to provide Plan participants with

25 complete and accurate information regarding WMI stock; (5) failure to prevent breaches by co-

26 fiduciaries of their duties of prudent and loyal management, adequate monitoring, and complete

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 4

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

and accurate communications; and (6) knowing participation in breaches.  Class Counsel conducted a thorough investigation into Plaintiffs' claims and the allegations set forth in the Complaint.

At the beginning of this litigation, Plaintiffs' investigative efforts included:  (1) reviewing publicly available documents, such as news articles, related complaints and pleadings, press releases, analyst reports, regulatory filings; (2) interviewing Plan participants and reviewing and analyzing documents collected from participants; and (3) researching the applicable law with respect to the claims asserted and the potential defenses thereto.  Loeser/Volk Decl. ¶ 27.

Class Counsel initiated document discovery at the outset of the case with statutory and informal requests to Defendants for a variety of ERISA-related materials.  In response to these requests, starting in December 2007, Defendants produced documents such as the Plan document; Plan Amendments; Trust Agreement; Plan Committee minutes and charters; Plan investment policy; and organizational charts.  *Id.* ¶ 28.

Starting in September 2008, Plaintiffs obtained documents that had previously been produced by WMI to the U.S. Securities and Exchange Commission and the U.S. Department of Labor, including:  (1) documents concerning WMI's financial condition and the performance of Company stock during the relevant time period, such as appraisal related materials; underwriting guidelines; Credit Risk Management materials; Home Loans Risk Management materials; WMI board minutes and presentations; and (2) documents concerning the Plan and administration of the Plan, such as communications with Plan participants.  *Id.* ¶ 29.

In January 2010, Plaintiffs received documents that had previously been produced to the Senate Permanent Subcommittee on Investigations, including materials related to the mortgages underwritten by WaMu, as well as appraisal-related materials.  *Id.* ¶ 30.

In February 2010, Plaintiffs obtained documents that had previously been produced to the Office of Thrift Supervision ("OTS") and the New York Attorney General, including Value-at-Risk (VaR) materials and Home Loans Division materials.  *Id.* ¶ 31.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

Starting in September 2009, the individual defendants produced documents, including Board materials; Executive Committee materials; Audit Committee materials; Credit Reserve Committee materials; Enterprise Risk Management and Compliance Committee materials; Monthly Credit Review materials; presentations by former defendant Killinger; and materials regarding the audit conducted by Deloitte & Touche. *Id.* ¶ 32.

All told, Plaintiffs obtained over 8 million pages of documents. Class Counsel set up a search-term based document review and had coded over 1.6 million pages of documents at the time of settlement. *Id.* ¶ 33.

In addition, the parties' discovery included the following:

### *Rule 26(f) conferences and production of ESI*

The parties held Rule 26(f) conferences on August 11, 2008 and September 5, 2008, and on September 15, 2008, the parties filed their first Rule 26(f) Report. Following the addition of Chase as a Defendant, the parties held additional Rule 26(f) conferences on March 2, 2009 and March 20, 2009, and then filed a Revised Rule 26(f) Report on March 30, 2009. *Id.* ¶ 35.

Both Rule 26(f) Reports contained detailed discovery plans, which included phasing the discovery into six separate categories of information repositories, with the first category of documents being Windows-based ESI ("WESI") maintained by individual custodians. The Rule 26(f) Reports also contained carefully negotiated forms of production and production protocols for the six categories of information repositories. *Id.* ¶ 36.

Plaintiffs diligently worked through the production protocol for obtaining custodial-based WESI. With input from their ESI experts, Plaintiffs created search terms to be run against 20 initial custodians. The search terms had to be modified when the documents migrated from WMI's Onsite3 platform to a Xerox platform, which occurred after Chase became the custodian of certain documents. Plaintiffs then further modified the search terms several times in order to reduce the costs of electronic discovery by reducing the number of search term "hits." After numerous meet and confers, as well as exchanging briefs under LR 37, Plaintiffs and Chase agreed on a procedure

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 6

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

whereby Plaintiffs would obtain additional ERISA-specific WESI.  Prior to production of the

ERISA-specific, custodial-based WESI from Chase (but after Class Counsel had analyzed

1.6 million of pages of documents pursuant to a search-term based review of over 8 million pages

of documents, including numerous documents produced by Chase), the case settled.  *Id.* ¶ 37.

### Initial Disclosures

Plaintiffs and Defendants served their Initial Disclosures on August 25, 2008.  Defendants

supplemented their disclosures on February 25, 2009.  Former defendant Chase served its Initial

Disclosures on April 27, 2009.  Plaintiffs served their Second Disclosures on April 27, 2009.  On

December 19, 2009, the ERISA officers, outside directors, and Killinger served Disclosures.  *Id.*

¶ 38.

### Parties' Written Discovery

Plaintiffs served their first Requests for Production on all Defendants on June 13, 2008, and

their second Requests on June 27, 2008.  On August 25, 2008, Plaintiffs re-served their first

Requests for Production and their revised second Requests on all Defendants.  Plaintiffs served

their first Interrogatories and first Requests for Admission, and third Requests for Production on

December 17, 2009.  On January 27, 2010, Plaintiffs served their second Interrogatories and fourth

Requests for Production on all Defendants.  *Id.* ¶ 39.

On October 1, 2008, Plaintiffs issued subpoenas to the Federal Deposit Insurance

Corporation and Chase.  Plaintiffs requested documents from the Office of Thrift Supervision on

October 23, 2008.  On January 21, 2009, Plaintiffs issued an additional subpoena to Chase and

submitted their first Requests for Production to Chase on February 18, 2009.  Plaintiffs also issued

a subpoena to Fidelity on March 9, 2009 and subpoenaed documents from Gibson, Dunn &

Crutcher LLP and Towers Watson & Co. on February 5, 2010.  *Id.* ¶ 40.

Plaintiffs responded to the Director Defendants' First Interrogatories and Requests for

Production on February 2, 2010.  *Id.* ¶ 41.

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 7

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1   On November 25, 2009, the Court set a fact discovery cut-off date of July 5, 2011, and a

2   trial date for July 16, 2012.  *Id.* ¶ 42.

3   **C.**     **Settlement Negotiations**

4       Class Counsel were cognizant of the impact of the bankruptcy proceedings on the ability of

5   Plaintiffs to fully recover the Plan's losses in this case and the risk of depletion of available

6   insurance coverage.  Accordingly, following a detailed review of the applicable insurance policies,

7   as well as an analysis of the merits of the litigation and ongoing changes and developments in

8   ERISA law, Class Counsel extended an initial settlement offer on February 12, 2009.  Settlement

9   discussions ensued and revised settlement offers were extended on February 27, 2009 and

10  November 12, 2009.  *See* Loeser/Volk Decl. ¶ 43.

11      On February 8, 2010, the parties (except for Chase) retained a mediator, the Honorable

12  Edward A. Infante, to assist them in mediating a settlement.  The mediation was scheduled for

13  April 21, 2010.  Prior to the mediation, Plaintiffs and bankruptcy counsel for WMI initiated

14  settlement discussions with regard to the claims against WMI in the bankruptcy proceedings, and

15  the related claims against Defendants.  These discussions subsequently broadened to include

16  counsel for Defendants (other than Chase).  Following extensive negotiation, the parties (except for

17  Chase) reached an agreement in principle to settle the ERISA action for $49 million, and on April

18  19, 2010, Plaintiffs and Defendants (except for Chase) signed the Memorandum of Understanding.

19  Following additional discussions, on May 27, 2010, Plaintiffs and Chase reached an agreement in

20  principle to settle the ERISA action.  Loeser/Volk Decl. ¶¶ 44, 49.  The parties executed the final

21  Settlement Agreement on June 18, 2010.

22      In sum, the Settlement Agreement was the result of lengthy and contentious arm's-length

23  negotiations.  *Id.* ¶ 50.  The process was in all respects thorough, adversarial, and professional.

24  **D.**     **Terms of the Settlement Agreement**

25      The complete terms and conditions of the proposed Settlement are set forth in Exhibit A to

26  the Loeser/Volk Declaration.  The following is a summary of the principal terms of the Agreement:

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 8

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1.      **Notice.**  Pursuant to the Agreement, the Class Notice was sent within 30 days of the Court's Preliminary Approval Order by first-class mail to each Settlement Class members' last known address.  *See* Declaration of Eric S. Mattson Regarding Class Notice ("Mattson Decl."), ¶ 5. Likewise, within 30 days of the Court's Preliminary Approval Order, the Publication Notice appeared in the Seattle Times and by electronic publication on the Business Wire.  *Id.* ¶¶ 3-4. Finally, the Class Notice and Settlement Agreement were posted on several internet websites identified in the Class Notice.  *See* Loeser/Volk Decl. ¶ 13; Affidavit of Service of Carlos I. Lara.

2.      **Plan of Allocation.**  The plan or formula of allocation of the Net Settlement Amount is the means by which the Net Settlement Amount will be divided and distributed amongst the Settlement Class.  Simply put, the Plan of Allocation will ensure that each Settlement Class member's *pro rata* share of the Net Settlement Fund corresponds to their losses as a percentage of the total losses suffered by Settlement Class members' investments in Company Stock during the Class Period.[4]

3.      **Releasees.**  The Releasees under the Agreement include Defendants and their parents, subsidiaries, affiliates, directors, officers, partners, employees, agents, attorneys, professionals, estates, heirs, successors, assigns, spouses and marital communities, and the Contributing Blended Policy Carriers.

4.      **Settlement Amount.**  The parties agreed to settle this action for the sum of $49,000,000 in cash.  In addition, Chase has agreed to pay the reasonable costs of notice and allocation of the Settlement proceeds.  Chase will not contribute to the $49 million Settlement Fund or provide any consideration other than the reasonable costs of notice and allocation of the Settlement proceeds.

5.      **Settlement Class.**  The Settlement Class consists of all persons who were participants in or beneficiaries of the Plan at any time between October 19, 2005 and September 26, 2008 and whose individual Plan account included investment in Company Stock.

---

[4] A copy of the proposed Plan of Allocation is attached to the Loeser/Volk Declaration as Exhibit B.

PLAINTIFFS' MOTION AND MEMORANDUM IN FOR FINAL APPROVAL OF SETTLEMENT (07-1874 MJP) – Page 9

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1    **6.    Released Claims.**  Section 4.2 of the Settlement Agreement defines the Released

2    Claims, which include, in general terms, all claims raised or that could have been raised in this

3    action that pertain to the allegations of the Complaint.

4    **E.    Bankruptcy Court Approval**

5         After this Court entered the Preliminary Approval Order, the parties moved the Bankruptcy

6    Court to obtain an order from the Bankruptcy Court in the Chapter 11 Case for approval of the

7    Settlement Agreement.  *See* Loeser/Volk Decl., Exhibit C.  The hearing for final approval in the

8    Bankruptcy Court is scheduled to occur October 22, 2010.

9    **F.    Reasons for Settlement**

10        Plaintiffs have entered into this proposed Settlement with an understanding of the strengths

11   and weaknesses of their claims.  This understanding is based on:  (1) the motion practice

12   undertaken by the parties; (2) the investigation, research, and discovery as outlined above; (3) the

13   likelihood that Plaintiffs would prevail on summary judgment; (4) the likelihood that Plaintiffs

14   would prevail at trial; (5) the range of possible recovery; (6) the substantial complexity, expense,

15   and duration of litigation necessary to prosecute this action through trial, post-trial motions, and

16   likely appeals, and the significant uncertainties in predicting the outcome of this complex litigation;

17   and (7) the significant risk that available insurance would be depleted over the course of the

18   litigation, and Plaintiffs would be unable to collect on a substantial judgment in the event they

19   prevailed in the litigation.  Having undertaken this analysis, Class Counsel and Plaintiffs have

20   concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the

21   Court for approval.  *See* Loeser/Volk Decl. ¶¶ 51, 56.

22                              **IV.   ARGUMENT**

23   **A.    The Settlement Agreement Meets the Judicial Standards for Final Approval**

24        Courts consistently favor the settlement of disputed claims, *see MWS Wire Indus., Inc. v.*

25   *California Fine Wire Co., Inc.,* 797 F.2d 799, 802 (9th Cir. 1986), "particularly where complex

26   class action litigation is concerned," *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir.

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 10

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1    1992).  Having preliminarily approved the Settlement and causing notice to issue to Settlement

2    Class members consistent with Fed. R. Civ. P. 23(e)(1) [Dkt. # 707], the Court must decide

3    whether final approval is warranted.  Ultimately, after affording Settlement Class members the

4    opportunity to comment on the proposed Settlement at the Fairness Hearing, the Court should

5    finally approve the Settlement if it determines that the Settlement is "fundamentally fair, adequate

6    and reasonable."  *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 625 (9th Cir. 1982).

7         A settlement is presumptively fair if: "(1) the negotiations occurred at arm's length;

8    (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar

9    litigation; and (4) only a small fraction of the class object[s]."  *Rodriguez v. West Publ. Corp*., 2007

10   U.S. Dist. LEXIS 74767, at *24-25 (C.D. Cal. Sept. 10, 2007) (citing Alba Conte & Herbert B.

11   Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)), *rev'd on other grounds*, 563 F.3d 948

12   (9th Cir. 2009).

13        The Settlement easily satisfies the first three fairness factors.[5]  Negotiations occurred at

14   arm's-length for over one year, and there is no hint of collusion.  The parties also engaged in

15   significant discovery, allowing Plaintiffs to understand the factual and legal issues of the case.

16   *See In re Wireless Facilities, Inc.,* 253 F.R.D. 630, 634 (S.D. Cal. 2008) ("Settlements that follow

17   sufficient discovery and genuine arms-length negotiations are presumed fair.").  Finally, Class

18   Counsel have extensive experience litigating claims of this same type, and are well informed of the

19   potential strengths and weaknesses of the case.  As a result, the proposed Settlement should be

20   afforded a presumption of fairness.

21        Further, the Settlement satisfies the eight factors articulated by the Ninth Circuit to

22   determine whether a settlement is fair, adequate, and reasonable:

23   (1)    strength of the plaintiff's case;
     (2)    risk, expense, complexity, and likely duration of further litigation;
24   (3)    risk of maintaining class action status throughout the trial;
     (4)    amount offered in settlement;
25   (5)    extent of discovery completed and stage of the proceedings;
     (6)    experience and views of counsel;

26   ───────────────
[5] The fourth factor will become relevant after the October 22, 2010 deadline to object to the Settlement has passed.

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 11

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

(7)     presence of a governmental participant; and

(8)     reaction of the Class members to the proposed settlement.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

Under these criteria, the proposed Settlement is worthy of final approval.

**1.     The Strength of Plaintiffs' Case Favors Approval of the Proposed Settlement.**

As evidenced by the vigor with which Class Counsel have prosecuted this action, Class Counsel believe strongly in the merits of this case.  Discovery conducted by Plaintiffs, together with ample public information, including media reports, congressional hearings, and federal investigations, in Plaintiffs' view, support Plaintiffs' core allegation that WMI stock became an imprudent investment for the Plan during the Class Period.  Again, in Plaintiffs' view, this is because, during the Class Period, WMI engaged in reckless conduct that imperiled the Company, including:  (1) over-reliance on the origination, securitization, purchase and sale of subprime mortgage loans and other risky mortgage loan products such as "negative amortization" loans; (2) lax underwriting policies for mortgage loans and related loan products; (3) participation in the systematic manipulation of the loan origination and property appraisal processes; (4) failure to implement and maintain risk management control processes; and (5) failure to properly account for its subprime lending and related business operations, all of which caused WMI's financial statements to be misleading and artificially inflated the value of shares of WMI stock and the Company Stock Fund in the Plan.

Furthermore, Plaintiffs believe the evidence would show that each Defendant (other than Chase, which was sued on a successorship theory) was a Plan fiduciary and failed to take action to protect the Plan and serve the participants' best interests as required by ERISA.  Therefore, Plaintiffs believe that by failing to take action to protect the Plan from significant losses during the Class Period, Defendants (other than Chase) breached their fiduciary duties.

Nonetheless, Plaintiffs also recognize the risks of continued litigation and an adverse outcome.  Plaintiffs acknowledge that many of the complex factual and legal issues involved in this

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 12

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

action are hotly contested, and both sides have proffered evidence to support their competing views of the case.  Moreover, courts have come to different conclusions regarding the circumstances under which plan fiduciaries must act to divest a plan of its investment in company stock, and a number of cases have been dismissed at the summary judgment stage on this basis.  Thus, while Plaintiffs and Class Counsel believe this is a strong case for Plaintiffs, the outcome of continued litigation remains uncertain.  Accordingly, the overall strength of the case and the substantial recovery obtained supports final approval of the proposed Settlement.

      2.        **The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weighs in Favor of Approval.**

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing Newberg on Class Actions, § 11:50 at 155).

As indicated above, litigation of this case poses risks for both Plaintiffs and Defendants. Although Class Counsel believe strongly in the merits of this case, Class Counsel are cognizant of the risk that continued litigation could end in non-recovery.  Moreover, Defendants have denied and vigorously defended against the allegations made by Plaintiffs and are expected to continue to do so should this action proceed through trial.

This case presents many complex legal and factual issues in a rapidly developing area of law.  To address the complexities and nuances of this case adequately, significant expenditures of time and money would be required.  Class Counsel and this Court have estimated that in addition to substantial preparation time and expense, a trial would take approximately two weeks.

Furthermore, because of the complexity of WMI's business and accounting practices, all parties would be required to consult with experts to support their positions.  Given the nature of this case, a judgment at trial would likely be appealed by the losing party.  Continued litigation would likely delay the Class's potential recovery for years, further reducing its value.

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 13

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

The Settlement cuts short many months of contested discovery, and eliminates the time and expense of the substantial motion practice that would occur going forward in this case.  Thus, the Settlement conserves judicial resources and reduces the expense associated with continued litigation.  Hence, this factor weighs in favor of final approval of the proposed Settlement.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial Weighs in Favor of Approval.

Though Defendants have a contrary view, Plaintiffs do not accord this factor much weight in this case.  Indeed, ERISA class actions of this type are considered a "paradigmatic example" of a Rule 23(b)(1) class as they constitute claims brought on behalf of an ERISA-governed plan under ERISA § 502(a)(2) and are, therefore, derivative in nature.  *In re Schering Plough Corp. ERISA Litig*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases).

### 4. The Amount Offered in Settlement Weighs in Favor of Approval.

A proposed settlement "may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527.  Moreover, a settlement should not be judged against a "speculative measure" of what could have been attained in negotiation.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, there is a broad range of potential recovery if the case went to trial.  It is possible that Defendants could prevail on one or more of their legal or factual arguments to defeat liability entirely.  While Plaintiffs are confident of the strength of the claims asserted here, they recognize that this possibility cannot be discounted completely.

Assuming liability can be established, several variables would be at work in fixing the actual amount of recoverable damages.  Key among these variables are (1) the legal framework for the measure of damages, and (2) the determination of when the failure to divest the Plan's holdings of WMI stock or to discontinue acquisition of WMI stock constituted breaches of fiduciary duty

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 14

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

("breach date"). These matters would be hotly contested in the absence of a settlement, and the Court's ultimate determinations would impact greatly the recoverable damages.

If the case were to go forward without a settlement, Plaintiffs would argue that damages should be calculated on the basis that Defendants were in breach of their fiduciary duties, both with respect to the Plan's continued holding of, and continuing investment in, WMI stock as of the outset of the Class Period, October 19, 2005. If Plaintiffs prevailed at trial on these points – a complete victory for Plaintiffs – the principal damages would be about $300 million. *See* Loeser/Volk Decl. ¶ 46. Hence, the Settlement represents approximately 17% of the maximum recovery. If, on the other hand, a later breach date were established – a more probable outcome – the total potential recovery would be substantially smaller. For example, a breach date of December 20, 2007 (when WMI confirmed that the SEC had launched in inquiry into its lending practices), would reduce damages by approximately 60% to $136 million, *see id.* ¶ 47, in which case the Settlement represents approximately 36% of the total possible losses. A breach date of June 6, 2008 (when the PIC considered, but voted against, liquidating the Company Stock Fund) would result in damages of approximately $75 million, in which case the Settlement represents 65% of the total possible losses. *Id.*

Plaintiffs note that courts are not of one mind as to what participants must show to meet their burden in establishing the breach date. Some courts posit that the company at issue must be facing an "imminent collapse," whereas others believe something less is required. Indeed, even different panels within the Ninth Circuit appear to disagree on this point. *Compare In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008) (holding that a "myriad of circumstances" can require fiduciaries to divest company stock under ERISA's "prudent man" standard) *with Quan v. Computer ScisCorp.,* No. 09-56190 (9th Cir. Sept. 30, 2010) (requiring plaintiffs to show either that "the company's viability as an ongoing concern" is threatened *or* there was "a precipitous decline in the employer's stock … combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement"). However put and whatever the standard, the

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 15

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

reality is that Plaintiffs' likelihood of success increases as the Class Period passes.  That is, the closer the date gets to WMI's bankruptcy, the greater the chances the Court would adopt that date as the breach date in this case.  For that reason, $300 million damage figure (calculated with the breach date of the start of the Class Period) is far less likely an outcome than the damages resulting from the later breach dates identified and discussed above.

Further, Plaintiffs anticipate that Defendants would argue that any calculation of damages should be limited to the losses resulting from the Plan's continued acquisition of WMI stock during the Class Period, and that no damages should be assessed with respect to their failure to divest the Plan's existing holdings of WMI stock at the beginning of or during the Class Period.  If Defendants were to prevail on this point, the amount recoverable would be significantly reduced.  Indeed, if Plaintiffs were able to establish liability, but the breach date were found to be December 20, 2007 or June 6, 2008, and only purchases of WMI stock were to be considered, principal damages would be $12 million and $9 million respectively, Loeser/Volk Decl. ¶ 48, which are significantly less than the Settlement amount.

Given the wide range of potential damages outcomes at trial, as well as the possibility of summary judgment or a verdict in favor of Defendants, the Settlement provides a substantial recovery well in excess of the range that courts traditionally have found to be fair and adequate. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement amounting to one-sixth of plaintiffs' potential recovery); *Officers for Justice*, 688 F.2d at 624 ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (citations and internal quotations omitted).  Taking into account the breach dates on which it is more likely that Plaintiffs would prevail at trial, there can be no real question that the results achieved in this case are outstanding.

Accordingly, the likelihood of success on the merits, weighed against the potential recovery, supports approval of the Settlement.

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 16

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

**5.      The Extent of Discovery Completed and the Stage of the Proceedings Weigh in Favor of Approval.**

The extent of discovery conducted helps to determine the parties' grasp of the strengths and weaknesses of the case. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (citing Manual for Complex Litigation § 30.42 (3d ed. 1995)).  Approval of a settlement is more likely if the settlement was reached after careful investigation and consideration of the "'legal and factual issues surrounding the case.'" *Id.* (quoting 5 Moore's Federal Practice, § 23.85(2)(e) (3d ed.)).

Class Counsel have undertaken extensive discovery in this action.  As described previously, Plaintiffs propounded numerous Requests for Production and Interrogatories to Defendants, and served multiple third parties with subpoenas for additional documents.  Plaintiffs also obtained considerable public documents and information from other lawsuits, congressional hearings and research.  Class Counsel also coded and reviewed over 1.6 million pages of documents, and performed targeted search term review on the more than 8 million pages of documents produced in discovery.

Based on this formal and informal discovery, Class Counsel have in-depth knowledge of the factual and legal issues of this case.  Although much remains to be done to prepare for trial, Class Counsel are fully aware of the strength of the claims and potential risks.  Thus, this factor also weighs in favor of final approval of the Settlement.

**6.      The Experience and Views of Counsel Weigh in Favor of Approval.**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Thus, in the absence of fraud or collusion during negotiation, deference should be afforded to the judgment of counsel.  *Id.* (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

As discussed below, Class Counsel have extensive experience in handling ERISA class action cases and other complex litigation.  Hagens Berman Sobol Shapiro and Keller Rohrback are

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 17

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

national leaders in this area of litigation, and have served as lead counsel in a large number of
similar ERISA breach of fiduciary duty cases throughout the country.  *See* Loeser/Volk Decl.
¶¶ 54-55.  Based on Class Counsel's experience and the specific facts and circumstances of this
case, Class Counsel have concluded that the Settlement is fair, reasonable, and adequate.  *Id.* ¶ 56.
This factor supports final approval of the proposed Settlement.

      **7.**      **The Reaction of Class members to the Proposed Settlement.**

      The deadline for objections to the Settlement is October 22, 2010.  To date, Plaintiffs are
not aware of any objections.  If objections are filed, Plaintiffs will address them.

**B.**      **The Settlement is not a Prohibited Transaction Under ERISA**

      The Settlement Agreement does not fall within the ambit of ERISA's prohibited transaction
provisions, *see* 29 U.S.C. § 1106 (entitled "Prohibited Transactions"), which are implicated in the
case of certain enumerated transactions involving either self-dealing by plan fiduciaries with
respect to the plan or its assets or the use of the plan or its assets by fiduciaries for their own
benefit or for the benefit of another party in interest.  *See Lockheed Corp. v. Spink,* 517 U.S. 882,
888 (1996) ("Congress enacted § [1106] to bar categorically a transaction that [is] likely to injure
the pension plan.") (internal citation omitted).

      More specifically, § 1106(a)(1) of ERISA prohibits "a fiduciary with respect to a plan"
from engaging in a series of enumerated transactions between a plan and a "party in interest,"
(29 U.S.C. § 1106(a)(1)), and § 1106(a)(2) prohibits a series of enumerated transactions "between a
plan and a  fiduciary" (29 U.S.C. § 1101(a)(2)).  The Settlement Agreement and the Settlement
cannot be viewed as a "prohibited transaction" here for numerous reasons – first and foremost
because neither the Plan nor any current fiduciary with respect to the Plan is party to the Settlement
Agreement.

      Indeed, Section 1106(a)(1) of ERISA is inapplicable to the Settlement because, with respect
to the Settlement Agreement and the transactions contemplated therein, the Defendants are not
acting as fiduciaries of the Plan and are not causing the Plan to enter into any transaction, much

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1   less a transaction that is "likely to injure" the Plan.  As no "fiduciary" has caused the plan to

2   engage in one or more of the transactions listed in §§ 1106(a)(1)(A) through (E), 29 U.S.C.

3   § 1106(a)(1)  has no application to the Settlement.  *See also Lockheed Corp.* v. *Spink,* 517 U.S. at

4   888 (noting that for there to be a violation of § 1106(a)(1), "a plaintiff must show that *a fiduciary*

5   caused the plan to engage in the allegedly unlawful transaction" and finding that "[t]he Court of

6   Appeals erred by not asking whether fiduciary status existed in this case before it found a violation

7   of § [1106](a)(1)(D)") (emphasis added).

8          As defined by ERISA:

9          [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
          discretionary authority or discretionary control respecting management of such plan or
10         exercises any authority or control respecting management or disposition of its assets, (ii) he
          renders investment advice for a fee or other compensation, direct or indirect, with respect to
11         any moneys or other property of such plan, or has any authority or responsibility to do so,
          or (iii) he has any discretionary authority or discretionary responsibility in the
12         administration of such plan."  [29 U.S.C. § 1002(21).]

13  Here, no Defendant is a fiduciary of the Plan because no Defendant exercises discretion or control

14  with respect to management, disposition or administration of the Plan or its assets, nor does any

15  Defendant render investment advice for a fee with respect to property of the Plan.  Indeed, because

16  the Plan has been transferred to Chase, none of the Defendants (other than Chase) continue to be

17  involved in the administration or management of the Plan or its assets in any way.  Certainly,

18  Defendants are not fiduciaries of the Plan in connection with the Settlement Agreement because

19  they are not entering into that agreement for or on behalf of the Plan but rather in their individual

20  capacities as defendants in a lawsuit.  The consideration to be provided by Defendants under the

21  Settlement Agreement is proceeds of the Blended Policies, and Defendants have not used or

22  affected assets of the Plan in any way in entering into the Settlement Agreement, nor is the Plan

23  itself a party to that agreement.  Accordingly, §1106(a)(1) of ERISA does not apply to the

24  Settlement Agreement.

25         Section 1106(a)(l) does not apply to the Settlement Agreement for the additional reason that

26  the Settlement Agreement does not involve any of the transactions enumerated therein.  *See* 29

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 19

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

U.S.C. §§ 1106(a)(l)(A)-(D).  The Settlement Agreement does not involve the extension of credit, the furnishing of goods, services or facilities or the acquisition of employer securities or real property on behalf of the Plan.  Accordingly, §§ 1106(a)(1)(B), (C) and (E) of ERISA are not implicated by the Settlement Agreement.

Sections 1106(a)(1)(A)  and (D) are not implicated either because the Settlement Agreement does not involve the sale, exchange or lease of property between the Plan and a party in interest, or the transfer to or use by or for the benefit of a party in interest of assets of the Plan. Once again, the Settlement Agreement does not implicate property or assets of the Plan.  Pursuant to the Settlement Agreement, members of the Settlement Class will receive payments as a result of the Contributing Blended Policy Carriers' funding of the Settlement Fund from the Blended Policies at the direction of Defendants (other than Chase), and Defendants and the Blended Policy Carriers will be released by the Named Plaintiffs, on behalf of themselves and the Settlement Class, from the Released Claims.  The Blended Policy proceeds, which exist only as a result of WMI's insurance contracts with the Blended Policy Carriers, are certainly not assets of the Plan. Nor do the Released Claims constitute assets of the Plan – by definition, they are the Named Plaintiffs' claims, and the Plan lacks standing to assert such claims on its own behalf.  *See Local 159 v. Nor-Cal Plumbing, Inc.,* 185 F.3d 978, 981-83 (9th Cir. 1999) (stating that "a federal court has no jurisdiction to hear a civil action under ERISA that is brought by a person who is not a participant, beneficiary or fiduciary" and finding that an ERISA plan cannot itself be a "fiduciary" entitled to sue under ERISA) (internal citations and quotation marks omitted); *see also* 29 U.S.C. §§ 1132(a)(2)-(3); 1132(e)(l). Hence, the Settlement Agreement simply does not involve any transaction between the Plan (or involving its assets) and a party in interest.

The U.S. Department of Labor (the "DOL") agrees that § 1106(a)(1) does not prohibit transactions such as the proposed Settlement.  Although it takes no position on whether such agreements constitute "prohibited transactions" under ERISA, the DOL has created an exemption, in certain circumstances, for agreements pursuant to which a plan or plan fiduciary releases a legal

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

or equitable claim of the plan against a party in interest, in partial or complete settlement of such claim, in exchange for consideration given by or on behalf of the party in interest. *See* Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, 68 Fed. Reg. 75,632-40 (Dec. 31, 2003) (providing that such settlement agreements are exempt from § 1106(a)(1) of ERISA under certain circumstances). In the notes to the exemption, the DOL states that certain agreements are, categorically, not prohibited transactions, and that the parties to such agreements thus would not need to attempt to comply with the exemption's requirements. *Id.* at 75,633. Included on the DOL's list of agreements that do not constitute "prohibited transactions" are settlement agreements that, like the Settlement Agreement here, provide for "reimbursement of a plan without a release of the plan's claim." *Id.* As stated above, the Plan is not a party to the Settlement Agreement. Moreover, as also stated above, the Plan lacks standing to assert claims arising under ERISA. The Settlement Agreement clearly does not release any claims of the Plan and thus falls into the category of agreements that, according to the DOL, are not implicated by § 1106(a)(1) of ERISA.

The remaining sections of § 1106 of ERISA are equally inapplicable to the Settlement Agreement. Section 1106(a)(2) does not apply because the Settlement Agreement does not involve a fiduciary with authority or discretion to control or manage the assets of the Plan permitting the plan to hold employer securities or real property. 29 U.S.C. § 1106(a)(2). That section is inapplicable to the Settlement Agreement for the additional reason that the Contributing Blended Policy Carriers will pay the Settlement Amount in cash and not in "employer securities or employer real property." *Id.* Section 1106(c), which requires the transfer to a plan, by a party in interest, of real or personal property "subject to a mortgage or similar lien" is inapplicable for the same reason.

Section 1106(b) of ERISA does not apply to the Settlement Agreement for many of the same reasons that render § 1106(a)(1) inapplicable. First, each of the subsections in § 1106(b) applies only to transactions controlled by an ERISA "fiduciary." *See* § 1106(b) ("A *fiduciary* with

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

respect to a plan shall not ...") (emphasis added); *see also Tibble* v. *Edison Int'l,* 639 F. Supp.

2d 1074, 1087-92 (C.D. Cal. 2009) (stating that because § 1106(b) applies, by its terms, only to

fiduciaries, "to be liable for a violation of § 1106(b)(3), the fiduciary receiving the 'consideration'

must have had control over the 'transaction' in question" in that the fiduciary must have made the

relevant decisions that caused the plan or its assets to be used or otherwise involved).  Accordingly,

§ 1106(b) of ERISA does not apply to the Settlement Agreement because, as stated above, the

Defendants are not fiduciaries of the Plan in connection with the Settlement Agreement.  Sections

1106(b)(1) and (b)(3), both of which apply only to transactions involving plan assets, are

inapplicable for the additional reason that, as stated above, the Settlement Agreement does not

implicate assets of the Plan.  Section 1106(b)(2), which requires that a fiduciary of a plan act in a

transaction involving the plan on behalf of a party whose interests are adverse to the plan or its

participants or beneficiaries, is inapplicable because Defendants are parties to the Settlement

Agreement in their individual capacities, as defendants in a lawsuit, and do not act on behalf of any

other party.  As with ERISA's other prohibited transaction provisions, §1106(b) of ERISA does not

apply to the Settlement Agreement.

Based on the above, the prohibited transaction provisions of ERISA are not implicated by

the Settlement Agreement or the settlement embodied therein.  Indeed, the DOL has been

informally notified of the Settlement Agreement and has not expressed objection thereto.

C.     **The Plan of Allocation is Fair and Reasonable and Should be Approved**

The same standards govern the assessment of a plan for distribution of settlement proceeds

that govern the review of the settlement as a whole – the plan must be fair, reasonable and

adequate.  *Class Plaintiffs,* 955 F.2d at 1284-85; *In re Citric Acid Antitrust Litig.,* 145 F. Supp.

2d 1152, 1154 (N.D. Cal. 2001).

Under the proposed Plan of Allocation, the Net Settlement Amount will be distributed

among the Settlement Class members in accordance with their alleged losses.  *See* Loeser/Volk

Decl., Ex. B.  The Allocation Administrator, Chase, will calculate each Settlement Class member's

PLAINTIFFS' MOTION AND
MEMORANDUM IN FOR FINAL
APPROVAL OF SETTLEMENT
(07-1874 MJP) – Page 22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

Net Loss by adding the dollar amount of the Class member's Plan account invested in Company Stock at the beginning of the Class Period to the dollar amount of the Class member's Plan account invested in Company Stock at the end of the Class Period, and deducting from this sum the dollar amount credited to the Class member's Plan account from sales of Company Stock during the Class Period and the dollar amount of the Settlement Class member's Plan account balance in Company Stock at the end of the Class Period.

The Net Losses of all Settlement Class members will be added.  Each Settlement Class member will then be assigned a Net Loss Percentage, reflecting the percentage of the Settlement Class member's loss in relation to all Settlement Class members' Net Losses.  Each Settlement Class Member's share of the Net Settlement Amount will equal the Net Settlement Amount multiplied by the Settlement Class member's Net Loss Percentage.

Each Settlement Class member may preserve the tax status of the retirement funds at issue. Settlement Class members who currently participate in the JPMorgan Chase 401 (k) Savings Plan ("Chase Plan") will receive their distributions in their Plan accounts.  Chase will notify those Settlement Class Members who do not currently participate in the Chase Plan ("former participants") that they can opt to have their distribution rolled into an IRA or another 401(k) plan. If the former participants do not make such an election within approximately 90 days of this notice, Chase will automatically pay them a lump sum with the appropriate taxes withheld.  Chase will provide former participants with its call center phone number and website to allow former participants to have their questions answered and make their election.

Accordingly, the Plan of Allocation is fair, reasonable and adequate, and should be approved.  *See In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (approving pro rata allocation plans for securities and ERISA classes); *accord In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) ("the court is satisfied that the plan of allocation is fair and reasonable because it appears to be rationally based on the participants'

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594

1   proportionate losses in the 401(k) plans"); *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810 (C.D.

2   Cal. Nov. 16, 2009) (approving as fair and reasonable a similar plan of allocation).

3   **D.     This Court Should Certify The Settlement Class**

4          This Court has preliminarily certified the Settlement Class, and Plaintiffs now request final

5   certification of the Settlement Class.  The Settlement Class is defined as:

6          All persons who were participants in or beneficiaries of the Plan at any time between
       October 19, 2005 and September 26, 2008, inclusive, and whose individual Plan account(s)
7          included investment in Company Stock; provided, however, that Defendants and their heirs,
       Successor-In-Interest, or assigns, to the extent such persons acquire an interest held by
8          Defendants, are excluded from the Settlement Class.

9          Plaintiffs have already addressed the class certification issues, *see* Dkt. #621 at 19-24, as

10  has the Court in its Preliminary Approval Order at ¶¶ 1-3.  Accordingly, Plaintiffs will not repeat

11  that discussion here.  Final certification is appropriate to allow the Settlement Class members to

12  partake of the benefits of the Settlement, and should be granted.

13                            **V.     CONCLUSION**

14         For the reasons discussed above, the Settlement is a fair, adequate, and reasonable

15  resolution of the claims against Defendants in this complex and contested ERISA class action.

16  Thus, Plaintiffs respectfully ask the Court to grant their motion and to enter the proposed Final

17  Approval Order which (1) grants final approval of the proposed Settlement; (2) approves the Plan

18  of Allocation; and (3) certifies the Settlement Class.

19         DATED:  October 1, 2010.

20                                      KELLER ROHRBACK L.L.P.

21                                      By:  /s/ Erin M. Riley
                                        Lynn L. Sarko, WSBA #16569
22                                      Derek W. Loeser, WSBA # 24274
                                        Erin M. Riley, WSBA # 30401
23                                      1201 Third Avenue, Suite 3200
                                        Seattle, WA 98101-3052
24                                      Telephone: (206) 623-1900
                                        Facsimile: (206) 623-3384
25                                      lsarko@kellerrohrback.com
                                        dloeser@kellerrohrback.com
26                                      eriley@kellerrohrback.com

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
**HAGENSBERMAN SOBOLSHAPIRO LLP**
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE: (206) 623-0594

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   /s/ Andrew M. Volk
Steve W. Berman, WSBA #12536
Andrew M. Volk, WSBA #27639
Genessa Stout, WSBA #38410
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
andrew@hbsslaw.com
genessa@hbsslaw.com

Interim Co-Lead Counsel for Plaintiffs

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LAW OFFICES OF
HAGENSBERMAN SOBOLSHAPIRO LLP
1918 8th Street, Suite 3300
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 623-7292
FACSIMILE:  (206) 623-0594